## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| HEATHER KAINZ, et al., on Behalf of Themselves and a Class of Similarly Situated Persons, ) | Case No. 21-cv-1250 |
| ) | |
| ) | Judge Ronald L. Hanna |
| Plaintiffs, ) | |
| -vs- ) | |
| ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFFS' REPLY TO DEFENDANTS WEXFORD HEALTH SOURCES, INC. AND JOHN SOKOL'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF NO. 179)

Wexford's[1] opposition to Plaintiffs' motion for class certification is based on factually distinguishable cases where courts denied class certification under circumstances much different than those present here. Wexford presents these opinions as if they present bright-line rules precluding class certification in sexual harassment class actions, when, in reality, the class certification analysis is fact-intensive and case-specific.

Contrary to Wexford's arguments, this case is ideal for class action treatment under Rule 23 because the claims of the putative class arise from a common nucleus of operative facts: the singular crisis at Pontiac arising from the Savage Life prison gang's arrival at Pontiac, associated inmate sexual harassment of prison employees through masturbation attacks, and Defendants' failures to properly address the situation. For the reasons discussed below and in Plaintiffs' principal brief, class certification is appropriate in this case under Rule 23

---

[1] For the purposes of this brief, "Wexford" refers to both Wexford Health Sources, Inc. and John Sokol.

1.    **A Purported Defect in the Class Definition Is Not a Basis to Deny Class Certification.**

Wexford wrongly argues that Plaintiffs have not satisfied Rule 23 because the class is not properly defined. This is not a basis for the Court to deny Plaintiffs' motion for class certification. "When possible, courts should amend defective class definitions rather than deny class certification." *Disalvo v. CRM US, Inc.*, No. 19-cv-425-jdp, 2020 U.S. Dist. LEXIS 99789, at \*5 (W.D. Wis. June 8, 2020) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014)); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Wexford's objection to Plaintiffs' proposed class definition is not a defense to class certification.

Plaintiffs' proposed class definition is intended to encompass all non-executive employees of IDOC and Wexford. It is not intended to exclude non-executive employees who may have limited supervisory authority, such as Nurse Practitioners, RNs, MPHs, and QMHPs. If the Court determines that the proposed class definition is not sufficient to encompass Nurse Practitioners, RNs, MPHs, and QMHPs, the Court should amend the class definition rather than deny class certification. *See Disalvo*, 2020 U.S. Dist. LEXIS 99789, at \*5.

Wexford also objects to the proposed class definition on statute of limitations grounds with respect to Plaintiffs' claims under Section 1983. However, courts have consistently recognized that class certification is appropriate even if a statute of limitations defense might apply to a subset of the proposed class. *See, e.g., In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir.2002) (recognizing that "[c]hallenges based on the statute of limitations . . . have usually been rejected and will not bar predominance satisfaction because those issues go to the

2

right of a class member to recover, in contrast to underlying common issues of the defendant's

liability"); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)

(explaining that "[a]s long as a sufficient constellation of common issues binds class members

together, variations in the sources and application of statutes of limitations will not automatically

foreclose class certification under Rule 23(b)(3)"); *Dennis v. Andersons, Inc.*, No. 20 C 4090,

2025 U.S. Dist. LEXIS 87116 (N.D. Ill. May 7,2025) ("Defendants ask the court to find that an

individualized affirmative defense—the statute of limitations on CEA claims—defeats a finding

of predominance. The court disagrees with defendants."); *Saltzman v. Pella Corp.*, 257 F.R.D.

471, 486 (N.D.Ill.2009) (holding that "this Court has rejected the per se prohibition against

certification based upon statute of limitations differences [between claims arising under the laws

of different states]"); *see also See Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016)

(recognizing that certification under Rule 23(b)(3) is appropriate even if there are "some

affirmative defenses peculiar to some individual class members"). Wexford's objection to the

class definition based on the statute of limitations for Plaintiffs' Section 1983 claims is not a

basis to deny class certification.

If the Court determines that the proposed class definition is deficient in any respect,

Plaintiffs request that the Court revise the class definition, or permit Plaintiffs to amend the

proposed class definition. *See Beaton v. SpeedyPC Software*, No. 13-cv-08389, 2017 U.S. Dist.

LEXIS 173631, at *9 (N.D. Ill. Oct. 19, 2017) (recognizing that "nothing prevents this Court

from considering a revised definition or, indeed, *sua sponte* revising the definition of a proposed

class").[2]

---

[2] Wexford is correct to assume that the proposed class definition was intended to be limited to female employees. The Court should revise the class definition to include only female employees. *See Beaton*, 2017 U.S. Dist. LEXIS 173631, at *9.

3

**2.    Plaintiffs Have Satisfied the Commonality Requirement of Rule 23(a)(2).**

Wexford relies on the Seventh Circuit's opinion in *Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021) to argue that Plaintiffs have not satisfied Rule 23(a)(2)'s commonality requirement. Wexford presents the *Howard* decision as if it contains a bright line rule prohibiting class certification in prison employee sexual harassment cases. However, the entire holding in *Howard* is premised on the notion that "[h]ostile work environment claims are fact intensive." 989 F.3d at 604. *Howard* is inapposite because it is factually distinguishable.

The *Howard* opinion analyzes two different types of harassment in the prison context: ambient harassment and direct harassment. *Id.* at 600–605. Ambient harassment is "indirect or secondhand harassment." *Id.* at 601. In contrast, direct harassment arises from "direct contact" with inmates. *Id.* at 604.

Wexford's position regarding *Howard* is a strawman argument to the extent it addresses ambient harassment. Plaintiffs are not pursuing this case based on an ambient harassment theory involving indirect or secondhand inmate harassment. As detailed in Plaintiffs' principal brief, the putative class was subjected to direct harassment by masturbation attacks from inmates at Pontiac. (ECF No. 179, p. 10–32.) Plaintiffs are not relying on an indirect theory of ambient harassment.

To the extent it found that there was no commonality under a direct harassment theory, the *Howard* opinion is fact-intensive. *Howard* did not find that prison employees cannot demonstrate commonality based on direct sexual harassment as a matter of law, as Wexford suggests. Rather, the direct harassment commonality analysis turned on the *Howard* plaintiffs' inability to show a common nucleus of fact in that specific case:

> Although the plaintiffs distance themselves from ambient harassment, their
> proposed common question has problems of its own. Namely, it begs the
> question—what "sexual harassment" are they referring to? It would be one thing

if all class members had experienced the same harassment. **But that is not what the evidence shows. Rather, the evidence reveals that class members' experiences can vary significantly depending on where they work.**

*Howard*, 989 F.3d at 604 (emphasis added). The court went on to highlight the enormous size of the jail complex at issue in *Howard*, and the different treatment that employees working in different areas of that jail received:

> The jail complex is massive. It fills dozens of buildings that sprawl across eight city blocks. There are many different work assignments, both within the jail and at the connected courthouse. **Unfortunately, sexual harassment occurs throughout the jail, but the evidence shows that it is heavily concentrated within a few residential divisions where a fraction of class members and named plaintiffs work.** The plaintiffs' own evidence suggests that employees who have worked in Divisions 8, 9, or 10 likely have endured far more frequent harassment than employees working elsewhere in the jail or at the courthouse. This does not mean that one class member (e.g., a Division 10 employee) has experienced a hostile work environment while another (e.g., a law librarian) has not. Rather, the questions of whether these two employees have endured objectively severe or pervasive harassment must be answered separately because they depend on individualized questions of fact and law, whose "answers are unique to each class member's particular situation.

*Id.* at 604-05 (cleaned up).

The *Howard* court further observed that in that case, "[t]he plaintiffs acknowledge that the frequency of sexual harassment varies by location." *Id.* at 605. The court found that commonality was not established because the plaintiffs did not produce evidence showing that a subset of the putative class worked in the areas where most of the incidents occurred:

> The plaintiffs have not shown, however, that employees who work in the courthouse or other parts of the jail frequently pass through—much less work in—Divisions 8, 9, and 10, where most incidents occur. Nor have they shown that most class members worked in Divisions 8, 9, or 10 during the relevant period. Indeed, if the named plaintiffs are representative of the class, it appears that employees who work in the courthouse generally do not transfer to positions at the jail.

*Id.* The court found that "[w]ithout a stronger evidentiary showing, the plaintiffs cannot demonstrate that class members working in disparate parts of the massive jail complex have experienced the same work environment." *Id.*

5

The reasons the *Howard* court denied class certification based on commonality are not present here. Unlike the putative class members in *Howard* whose treatment varied across a sprawling complex with dozens of buildings, the members of the putative class here perform similar job duties, in the same locations, travel throughout the prison during their shifts, work with the same male maximum security population of inmates, and are subjected to the same singular crisis of masturbation attacks precipitated by the Savage Life gang's arrival at Pontiac. (ECF No. 179, p. 41-42.) As the *Howard* court acknowledged, "[h]ostile work environment claims are fact intensive." *Howard*, 989 F.3d at 604. Unlike the plaintiffs in *Howard*, the Plaintiffs in this case have shown that the putative class's claims arise from a common core of operative facts.

Wexford argues that members of the putative class cannot establish the elements of their discrimination claims because 1) whether each individual employee faced an objectively hostile work environment; 2) each employee's subjective perception of her work environment is necessarily an individual inquiry that cannot be addressed on a class-wide basis; and 3) liability turns on Defendants' negligence as to each employee. Wexford's arguments go to the merits of Plaintiffs' claims, which can only be considered on a limited basis at the class certification stage. *Simpson v. Dart*, 23 F4th 706, 711 (7th Cir. 2022). "At class certification, the issue is not whether plaintiffs will be able to prove [the] elements [of their claims] on the merits, but only whether their proof will be common for all plaintiffs, win or lose." *In re Allstate Corp. Securities Litig.*, 966 F.3d 595, 604 (7th Cir. 2020). Moreover, the fact that some class members may be subject to unique defenses does not defeat a showing of commonality. *In re Cordova*, 668 B.R. 413 (Bankr. N.D. Ill. 2025) (noting that Rule 23(a)(3) is disjunctive and that it only requires that the "claims *or* defenses" are common).

6

Wexford's arguments regarding the elements of Plaintiffs' discrimination claims are misplaced because they go beyond the scope of the merits analysis that is permissible at the class certification stage. For the reasons discussed above and in Plaintiffs' principal brief, Plaintiffs have sufficiently established the commonality element of class certification under Rule 23. Notwithstanding that, Wexford's arguments have been raised by defendants in other cases and rejected for the reasons discussed below.

### a. Objectively hostile work environment

Wexford wrongly argues that Plaintiffs are attempting to aggregate the experiences of the putative class to satisfy the objective element of their sexual harassment claims. It relies upon *EEOC v. Int'l Profit Assocs.*, No. 01 C 4427, 2007 U.S. Dist. LEXIS 78378 (Oct. 23, 2007), in which the United States District Court for the Northern District of Illinois found that each member of a class must be subjected to pervasive conduct to satisfy the objective element. Collective isolated and sporadic instances of harassment suffered by all members of a class are not sufficient to satisfy this standard. *Id.* at \*20.

*Int'l Profit Assocs.* is distinguishable because Plaintiffs are not relying on isolated and sporadic harassment. Rather, Plaintiffs have submitted ample evidence showing that the masturbation attacks that members of the putative class are subjected to are pervasive, happening day and night. (ECF No. 179, p. 23-27.) The attacks became so common that management started telling new hires that they would experience them. (ECF No. 179, p. 27.) The constant daily masturbation attacks suffered by the putative class are a far cry from the isolated and sporadic instances of harassment at issue in *Int'l Profit Assocs.*

This case is analogous to *Brown v. Cook Cty.*, 332 F.R.D. 229 (N.D. Ill.), where the Northern District of Illinois found that commonality existed under similar circumstances as those present here. *Brown* involved similar masturbation attacks within the Cook County Jail system.

335 F.R.D. at 233–34. The defendants in *Brown*, like Wexford in this case, argued that based on

the Seventh Circuit's decision in *Bolden v. Walsh Construction Co.*, 688 F.3d 893 (7th Cir.

2012), the fact that members of the putative class worked in different locations defeated

commonality. The *Brown* court found the citation to *Bolden* "unavailing" because

"*Bolden* concerned allegations of discrimination from a class of construction workers who

worked on more than 260 different worksites around Chicago":

> Each worksite was led by a superintendent, and each superintendent exercised his
> discretion differently, though the plaintiffs contended many practiced or permitted
> racial discrimination.   The Seventh Circuit concluded that because the
> discrimination was effected by myriad different independent actors without any
> apparent common cause, there were no sufficiently important common questions
> subject to collective resolution. The defendants contend the same rationale applies
> here to the sixteen different divisions of the Public Defender program and the
> various different working situations assistant public defenders experience across
> the Cook County Jail system.

*Brown*, 332 F.R.D. at 240 (cleaned up).

The *Brown* court rejected the defendants' arguments because "[s]ince *Bolden* was

decided, . . . the Seventh Circuit has explained that working in different locations and for

different supervisors does not automatically defeat commonality for a putative employment

discrimination class." *Id.* The *Brown* court found that the commonality element was satisfied

because the plaintiffs "point[ed] to evidence . . . that they contend shows common questions

regarding several of the defendants' policies and their effects on the plaintiffs' work

environment. " *Id.* at 241. The court found that the following common questions posed by

plaintiff class were sufficient to establish commonality:

> whether the attacks by inmates were so severe or pervasive as to alter the
> conditions of employment and create a hostile or abusive working environment;
> whether the defendants' policies led to the rapid proliferation of masturbation
> attacks against public defenders and law clerks across the Cook County Jail
> system; whether the defendants discouraged the plaintiffs from reporting when
> they were attacked; and whether the defendants' delay in making effective
> changes to reduce the rate of violence constituted an unreasonable delay in
> discovering and remedying the situation.

8

*Id.*

Plaintiffs' principal brief in this case identifies a list of numerous common questions of law and fact common to the putative class. (ECF No. 179, p. 41.) Like the certified plaintiff class in *Brown*, common questions relevant to the putative class in this case involve, among other things, issues of policy created by Defendants that affect all class members, and whether those policies created a sexually hostile work environment for all female mental health and healthcare employees at Pontiac as a result of rampant inmate masturbation attacks. (ECF No. 179, p. 41.) Contrary to Wexford's arguments—which are similar to those rejected in *Brown*—these common questions are sufficient to establish commonality.

### b. Subjectivity

Citing no authority, Wexford incorrectly argues that commonality cannot be established because the subjectivity element of Plaintiffs' claims "by its very nature, is not something that can be determined on a class-wide basis." (ECF No. 193, p. 21.) In *Brown*, the defendants took a similar position, arguing "that the plaintiffs' hostile work environment claims are a poor fit for class treatment because they involve both objective and subjective elements." 332 F.R.D. at 241. The court rejected the defendants' position, recognizing that courts within the Seventh Circuit have consistently certified classes in employment discrimination cases under Rule 23 "despite the fact that these claims include a subjective element." *Id.* (citing *Brand v. Comcast Corp.*, 302 F.R.D. 201, 221-22 (N.D. Ill. 2014); *Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2011 U.S. Dist. LEXIS 52345 (N.D. Ill. May 11, 2011); *Smith v. Nike Retail Servs.*, 234 F.R.D. 648, 660-61 (N.D. Ill. 2006)). The Court should reject Wexford's argument for the same reason.

Wexford's argument regarding the subjectivity element improperly attempts to raise the standard for class certification under Rule 23. The Supreme Court has recognized that "Rule 23(b)(3) [] does not require a plaintiff seeking class certification to prove that each element of his

9

claim is susceptible to classwide proof. What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quoting Fed. Rule Civ. Proc. 23(b)(3)) (cleaned up). Even assuming, for the sake of argument only, that Plaintiffs could not establish the subjectivity element on a class-wide basis, that deficiency would not defeat class certification because Plaintiffs need not prove that all elements of their employment discrimination claims are susceptible to class-wide proof. Wexford's subjectivity argument should be rejected.

### c. Employer Liability/Negligence

Wexford next argues that commonality cannot be established because Plaintiffs cannot show that Wexford is sufficiently culpable for the actions of the nonparty inmates at Pontiac. Although Wexford's argument is couched in terms of commonality, this argument is purely merits-based. As the Seventh Circuit has recognized, "[l]ikelihood of success on the merits is not among" the elements of class certification under Rule 23. *Simpson*, 23 F.4th at 711.

Wexford cites *Howard* to show that Plaintiffs "must show that (1) the defendants knew or should have known about the harassment and (2) failed to take reasonable steps to prevent it." *Howard*, 989 F.3d at 607. However, to the extent that the *Howard* opinion addresses negligence, it is in the context of predominance, not commonality. Notwithstanding that, as discussed above, *Howard* is a fact-driven decision addressing a "massive" jail complex that is distinguishable from Pontiac. *Id.* at 604–05. The *Howard* court recognized that "[t]he reasonableness of an employer's response to harassment is a fact-bound inquiry." *Id.* at 608. "The response must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Id.* (cleaned up).

10

The *Howard* court's ruling that the predominance element was not satisfied in that case was based on its observation that "the jail complex is not a homogenous workplace":

> In some parts, the harassment is worse—much worse—than in others. The adequacy of a particular response is evaluated by reference to the underlying problem. Whether preventative measures are reasonable for a given employee depends on the "gravity" of harassment that she endures, and the gravity of harassment, in turn, depends on where she works.

*Id.* at 609. For the same reasons discussed above, these concerns are not present here. Unlike the massive jail complex at issue in *Howard*, the sexual harassment issues at Pontiac are sufficiently homogenous to support class certification. The employees here are subject to similar levels of inmate sexual misconduct, and Defendants' discriminatory policies uniformly affect members of the putative class.

Wexford's insistence that *Howard* is dispositive of Plaintiffs' motion ignores *Howard's* repeated admonitions that "[h]ostile work environment claims are fact intensive." 989 F.3d at 604. Unlike the facts in *Howard*, the facts in this case justify class certification under Rule 23.

3.    **The Plaintiffs Have Shown that the Experiences of the Named Plaintiffs are Typical of the Class as a Whole.**

Wexford next argues that Plaintiffs' claims are not typical of the entire proposed class for the purposes of Rules 23(a). Wexford incorporates by reference the arguments raised by the other Defendants as to typicality. Plaintiffs likewise incorporate their arguments regarding typicality from their principal brief and other reply briefs, which show that Plaintiffs' claims are typical of the putative class.

4.    **Common Questions Predominate Over Individual Issues.**

Wexford relies on its commonality analysis to also argue that Plaintiffs have not satisfied Rule 23's predominance requirement. However, for the same reasons discussed above with respect to commonality, Plaintiffs have also established issues subject to class-wide proofs predominate over individual issues. Plaintiffs' principal brief discusses at length the common

nucleus of operative facts arising from the crisis related to the Savage Life gang's arrival at Pontiac, which similarly affects all members of the putative class. (ECF No. 179, p. 11-38.) This common nucleus of operative facts weighs in favor of a finding of predominance. *See Brown*, 332 F.R.D. at 243.

Wexford also argues that predominance is not satisfied because none of the named Plaintiffs still works for Wexford, and since Wexford has not been operating as a contractor of IDOC since July 30, 2025. Plaintiffs did not learn of this fact until after their motion for class certification was filed. Plaintiffs will not seek prospective injunctive relief against Wexford because Wexford is no longer operating at Pontiac. However, this only affects Plaintiffs' claims against Wexford to the extent that they sought certification of an injunctive class under Rule 23(b)(2). Notwithstanding the termination of Wexford's contract with IDOC, Plaintiffs can establish that class certification is appropriate under Rule 23(b)(3) for the reasons discussed above and in their motion.

**5.    A Class Action Is Superior to Other Available Methods for Adjudicating This Controversy.**

Based on the Northern District of Illinois' opinion in *Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019), Wexford argues that the superiority element cannot be satisfied in a sexual harassment class action if liability and damages cannot be established on a class-wide basis. As with their treatment of *Howard*, Wexford wrongly presents *Van*, a fact-driven opinion, as if it presents a bright-line rule affecting all sexual harassment class actions. *Van* is inapposite because it is factually distinguishable.

The *Van* court found that the plaintiffs in that case had not established superiority based on a litigation plan the plaintiffs submitted. *Van*, 332 F.R.D. at 290-91. The court determined that a class action was not superior to address the dispute at issue in that case, which, based on the plaintiff's own litigation plan, "would be unmanageable because it would necessitate

hundreds of separate hearings" even if liability could have been determined on a class-wide basis. *Id.* The *Van* court further determined that liability could not be established on a class-wide basis because the plaintiffs did not establish the existence of an employment policy affecting the entire class, or any other basis for establishing liability on a class-wide basis. *Id.* at 275-80.

That is not the case here. As discussed at length in Plaintiffs' principal brief, Defendants' liability in this case arises from one crisis at Pontiac: the arrival of the Savage Life gang, the epidemic of sexual harassment that came with it, and Defendants' failures to implement policies to address it. (ECF No. 179, p. 18-38.) Unlike *Van*, the questions posed in this case will not require hundreds of individualized hearings to resolve. To the extent that there is variance within the putative class, they could be addressed by using "streamlined mechanisms" such as form affidavits requiring "straightforward binary answers." *Beaton*, 20174 U.S. Dist. LEXIS 173631, at *26. For all the reasons discussed above, the class action mechanism is superior to address the generalized issues facing the entire putative class.

**6.    Wexford's Arguments Regarding Hybrid Certification Are Moot.**

Wexford argues that hybrid certification under Rule 23(b)(2) is not appropriate for various reasons. However, as discussed above, Plaintiffs' request for injunctive relief as to Wexford is moot because of the termination of Wexford's contract with IDOC. As Wexford acknowledges, Rule 23(b)(2) only applies to classes seeking injunctive relief. (ECF No. 193, p. 33.) Wexford's arguments regarding the propriety of a two-phase framework under *Teamsters* is limited to Wexford's Rule 23(b)(2) argument and is therefore also largely moot.

Notwithstanding that injunctive relief is no longer necessary as to Wexford since it is no longer operating within Pontiac, Plaintiffs maintain their request for certification of an injunctive class under Rule 23(b)(2) with respect to the other Defendants in this case. When a plaintiff seeks certification of a hybrid class under Rule 23(b)(2) and (b)(3), the elements of class

certification must be established separately with respect to each rule. *Van*, 332 F.R.D. at 292. For all the reasons discussed in Plaintiffs' briefing, Plaintiffs have established the requisite elements to certify a damages class with respect to their claims against Wexford.

Further, Wexford's arguments that Plaintiffs' pattern or practice claims are not suitable for class certification misapply the law. In *Sellers v. CRST Expedited, Inc.,* 359 F.Supp.3d 633 (N.D. Ill. 2019), relied on heavily by Wexford, the Plaintiffs alleged sexual misconduct took place in a private setting, and distinguished cases like *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 880 (D. Minn. 1993) and *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.,* 990 F. Supp. 1059 (C.D. Ill. 1998), where the conduct involved sexually explicit graffiti and posters found in common areas such as the lunchroom, lockers, desks, offices, vehicles, elevators, women's restrooms, inter-office mail and company bulletin boards, and thus impacted the workplaces as a whole. 359 F.Supp. 3d at 659 ("Here, the alleged conduct almost exclusively involves actions perpetuated by one individual against another individual in an isolated environment, not conduct in a common environment directed against several women at once. This is relevant to the proof plaintiffs intend to use to at Phase I to establish the offensive conduct, which is an element that plaintiffs have failed to address and that does not appear to be amenable to common evidence.")

Unlike in *Sellars,* here, masturbation by IICs was very public, occurred in open areas such as the cellhouses and yards, and created a common environment that impacted female staff as a whole. See, e.g., ECF. 179, 24-25 ("At Pontiac there isn't anyone off limits."). Further, it is difficult to imagine any women who was not subjectively offended by the masturbation attacks at issue in this case, unlike in *Sellars* where the incidents were context specific. As such, these claims are ideally suited for two-phase pattern and practice framework. *Id.*, at 43-46. *Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019) and *EEOC v. Int'l Profit Associates, Inc.*, No. 01-C-

4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007), also relied on by Wexford, are distinguishable for the same reasons as *Sellars*.

**7.    Class Certification Is Appropriate as to Plaintiffs' 42 U.S.C. § 1983 Claims**

The only unique argument that Wexford raises as to class certification as to Plaintiffs' Section 1983 claims is that Wexford argues that it was not acting under color of state law for the purposes of Section 1983. This argument is not relevant to class certification because it goes to the merits of Plaintiffs' claims. *See Simpson*, 23 F.4th at 711 (recognizing that "[l]ikelihood of success on the merits is not among" the elements of class certification under Rule 23).

**WHEREFORE**, for the reasons set forth above and in their motion, Plaintiffs' motion for class certification (ECF No. 171) should be granted.

Dated: November 21, 2025

Respectfully submitted,

*By: /s/ Matthew Turchyn*

| | | |
|---|---|---|
| Patricia A. Stamler | M. Nieves Bolaños | Martin A. Dolan |
| Elizabeth C. Thomson | Patrick J. Cowlin | DOLAN LAW PC |
| Matthew J. Turchyn | HAWKS QUINDEL, S.C. | 10 South LaSalle Street |
| HERTZ SCHRAM PC | 111 East Wacker Drive, Suite | #3702 |
| 1760 S. Telegraph Road, | 2300 | Chicago, IL 60603 |
| Suite 300 | Chicago, IL 60601 | (312) 676-7600 |
| Bloomfield Hills, MI 48302 | (312) 224-2423 | mdolan@dolanlegal.com |
| (248) 335-5000 | mnbolanos@hq-law.com | |
| pstamler@hertzschram.com | pcowlin@hq-law.com | |
| lthomson@hertzschram.com | | |
| mturchyn@hertzschram.com | | |

*Attorneys for Plaintiffs*