**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| HEATHER KAINZ, SARA BAILEY, REBECCA BUCZKOWSKI, SABRINA DRYSDALE, and REBEKAH McGRATH, on Behalf of Themselves and a Class of Similarly Situated Persons,<br>        Plaintiffs,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS; LATOYA HUGHES, in her Official Capacity as Director of the Illinois Department of Corrections; LEONTA JACKSON, former Warden, in his Individual Capacity; MINDI NURSE, in her Official Capacity as the Warden of Pontiac Correctional Center; TERI KENNEDY, former Warden, in her Individual Capacity; EMILY RUSKIN, former Warden, in her Individual Capacity; KELLY RENZI, former IDOC Psychology Administrator, in her Individual Capacity; JOHN SOKOL, in his Individual Capacity; and WEXFORD HEALTH SOURCES, INC.,<br>        Defendants. | Case No. 1:21-cv-01250-JEH-RLH |

**Order**

1

Now before the Court is the Plaintiffs' Motion for Class Certification (D. 171).[1] The Motion is fully briefed, and for the reasons set forth *infra*, the Motion is GRANTED.

## I

Plaintiffs Heather Kainz, Sara Bailey, Rebecca Buczkowski, and Sabrina Drysdale[2] originally filed their putative class action on June 16, 2021. Their Third Amended Complaint (D. 114), the controlling complaint, names an additional plaintiff, Rebekah McGrath. The Plaintiffs are or were, respectively, allegedly employed jointly by IDOC and Wexford, jointly by IDOC and Wexford, by just IDOC, initially through Wexford and then directly with IDOC, and for IDOC through Wexford. They worked at IDOC as, respectively, a Mental Health Professional (MHP), a MHP, a Correctional Nurse, a Registered Professional Nurse (RN), and a Licensed Practical Nurse (LPN). They worked, respectively, at Pontiac from June 2016 to January 2020, May 2017 to January 2020, May 2014 to September 2022, since 2015, and since January 2017. Defendants are the Illinois Department of Corrections (IDOC), Director of IDOC Latoya Hughes, former Warden of Pontiac Correctional Center (Pontiac) Leonta Jackson, Warden of Pontiac Mindi Nurse[3], former wardens of Pontiac Teri Kennedy and Emily Ruskin, former IDOC Psychology Administrator and Mental Health Director Kelly Renzi, Wexford Mental Health Services Director at Pontiac and Regional Mental Health

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] Plaintiff Sabrina Fox's last name changed to Drysdale due to her marriage after the filing of the initial complaint. *See* First Am. Class Action Compl. (D. 60 at ECF p. 20 n.2).

[3] The IDOC Defendants previously represented that Defendant Mindi Nurse in her official capacity was automatically substituted for former Warden Leonta Jackson in his official capacity pursuant to Federal Rule of Civil Procedure 25(d). *See* Def. IDOC, Jackson, and Nurse's Answer (D. 93 at ECF p. 49 n.3). Defendant Latoya Hughes in her official capacity was substituted for Rob Jeffreys in his official capacity pursuant to Rule 25(d). *See* 7/13/2023 Text Order. The Plaintiffs appear to believe Jeffreys remains as a defendant in this case. *See* Pls.' Mem. (D. 179 at ECF p. 9) (identifying as defendants "Latoya Hughes and Rob Jeffreys"). The Third Amended Complaint listed Jeffreys in his official capacity only. (D. 114 at ECF p. 1). Thus, he was no longer a defendant as of July 13, 2023 by reason of Rule 25(d).

Director John Sokol, and Wexford Health Sources, Inc.  Defendants Hughes and Nurse are sued in their official capacities, and Jackson[4], Kennedy, Ruskin, Renzi, and Sokol are sued in their individual capacities.

The Plaintiffs seek relief for themselves and other female medical and mental health employees of IDOC and Wexford at Pontiac for allegedly being forced to endure exposure to masturbation and other vulgarities and sexual harassment on a regular basis as a term and condition of their employment. Specifically, the Plaintiffs allege the environment at Pontiac is as follows:  male inmates have intentionally exposed their penises and masturbated at and/or on the Plaintiffs and other female medical and mental health employees throughout the prison, including in the galleries, cells, recreation yards, therapy and treatment rooms, and infirmary.  They say it occurs on a near-daily basis, and it has been an ongoing and escalating issue for the Plaintiffs and putative class for at least the past several years.  According to the Plaintiffs, the Defendants intentionally subjected the Plaintiffs and putative class to unequal and discriminatory treatment in violation of the Plaintiffs' equal protection rights under the Fourteenth Amendment and 42 U.S.C. § 1983, where, among other things, the Defendants knowingly opted not to take appropriate corrective action to prevent the systemic attacks intentionally directed to women and acted affirmatively to cause and/or increase the masturbation and indecent exposure attacks perpetrated against female Plaintiffs and the putative class.  Further according to the Plaintiffs, as a result of the Defendants' actions, policies, practices, procedures, and deliberate indifference which have encouraged and caused the inmates' conduct targeted toward female employees, the Plaintiffs and putative class have been and continue

---

[4] Leonta Lashone Jackson, Jr., in his capacity as Administrator of the Estate of Leonta Jackson, was substituted for Defendant Leonta Jackson pursuant to Federal Rule of Civil Procedure 25(a)(1) on June 25, 2025.  *See* 6/25/2025 Text Order.

to be subjected to sex discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* The Plaintiffs seek damages as well as a judgment declaring that the Defendants' discriminatory policies and practices violate Section 1983 and Title VII, a judgment requiring the Defendants take effective and permanent remedial action to enjoin and prevent the alleged discriminatory practices, a declaratory judgment stating the Defendants' deliberate actions and inactions violate the Fourteenth Amendment, and an order enjoining the Defendants and any and all persons acting in concert with them from engaging in acts that violate the Plaintiffs' and putative class's civil rights under Section 1983 and Title VII.

The Plaintiffs now seek certification of the following class and subclass:

**Title VII/Section 1983 Class – IDOC and Wexford.** All current and former nonsupervisory employees who at any time from June 23, 2018, through the present have worked at Pontiac prison through Wexford or IDOC directly in the medical or mental health departments, including in the following positions: Qualified Mental Health Professional (QMHP), Mental Health Professional, Behavioral Health Technician (BHT), Recreational Therapist, Psychiatric Nurse Practitioner, Social Worker, Clinical Counselor, Clinical Psychologist, Correctional Nurses and trainees, Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified Nursing Assistants (CNAs), Certified Medical Technicians, Nurse Practitioners, Psychiatrists, and Physicians.

**Wexford Subclass.** All current and former nonsupervisory employees who at any time from June 23, 2018, through the present have worked at Pontiac prison through Wexford in the medical or mental health departments, including in the following positions: Qualified Mental Health Professional (QMHP), Mental Health Professional, Behavioral Health Technician (BHT), Recreational Therapist, Psychiatric Nurse Practitioner, Social Worker, Clinical Psychologist, Clinical Counselor, Correctional Nurses and trainees, Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified

Nursing Assistants (CNAs), Certified Medical Technicians, Nurse Practitioners, Psychiatrists, and Physicians.

Pls.' Mem. (D. 179 at ECF pp. 8-9).

## II

As an initial matter, the Court addresses the parties' arguments with respect to the class definitions. A class "must be defined clearly and [ ] membership [must] be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The Plaintiffs concede in their Reply that Wexford was correct to assume (in a footnote in its Response) that the proposed class definition was intended to be limited to female employees. Pls.' Reply (D. 200 at ECF p. 3 n.2). Defendants IDOC and Nurse and Wexford and Sokol argue that the class proposed by the Plaintiffs has not been properly defined. Specifically, those Defendants argue the issue is with "nonsupervisory employees" because, as Wexford and Sokol put it, "a number of the employee positions that the [P]laintiffs want to include in the class are, by their nature, 'supervisory' positions, in that employees in such positions are tasked with the supervision of other Wexford employees." Wexford Defs.' Mem. (D. 193 at ECF p. 11). Defendants IDOC and Nurse argue similarly, saying some of the named Plaintiffs have managerial and supervisory responsibilities and hence are excluded from the class. IDOC Defs.' Mem. (D. 198 at ECF p. 7). Disputing a defect in the class definition is a basis to deny class certification, the Plaintiffs explain in reply that their proposed class definition is intended to encompass all non-executive employees of IDOC and Wexford and is not intended to exclude non-executive employees who may have limited supervisory authority such as Nurse Practitioners, RNs, MHPs, and QMHPs. In a separate reply, the Plaintiffs argue they have defined the class to exclude "true management level employees". Pls.' Reply to IDOC (D. 202 at ECF p. 11).

5

The Seventh Circuit has explained, "Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science.  Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).[5]  In light of *Messner* and the parties' recognition that "female" was mistakenly omitted, the Court refines the Class and Subclass definitions to include the word "female" before "employees" in the first sentence of each definition.  As for the dispute over "nonsupervisory", the Court refines the Class and Subclass definitions by replacing "nonsupervisory" with "non-executive" in light of the Plaintiffs' reply arguments.  *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (providing "the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B).").

## III

Federal Rule of Civil Procedure 23, governing class actions, sets forth four requirements for class actions:  1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation.  FED. R. CIV. P. 23(a).  Rule 23 requires a plaintiff seeking class certification to satisfy those four requirements "and any one of the general categories of Rule 23(b)."  *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020).  The party who seeks class certification bears the burden of showing by a preponderance of the evidence that certification is proper.  *Id*.  A district court must engage in a "rigorous analysis" to determine whether the prerequisites for class certification have been met.  *Santiago v. City of Chi.*, 19 F.4th 1010, 1016 (7th Cir. 2021).

---

[5] A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim."  *Messner*, 669 F.3d at 825.  Those class definitions are improper and also not present in this case.  *Id*.

## A

Only the IDOC Defendants suggest the numerosity requirement is "tenuous at best" here. The Seventh Circuit has said, "Our cases have recognized that 'a forty-member class is often regarded as sufficient to meet the numerosity requirement.'" *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting *Orr*, 953 F.3d at 498). The Plaintiffs represent that the proposed Class and Subclass are comprised of more than 100 members. The Wexford Defendants note that 153 employees of Wexford worked in the particular positions the Plaintiffs identify in their proposed class definition. The numerosity requirement is satisfied in this case where the numbers identified are well in excess of 40 members. *See Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 361 (N.D. Ill. 2018) ("Although estimates of class size may not be based on pure speculation, the plaintiff need not demonstrate the exact number of class members, so long as numerosity is apparent based on a good-faith estimate and common sense.") (internal citation omitted). Such a finding is warranted where the IDOC Defendants argue the total number of eligible class members may be below the threshold for a showing of numerosity where individual employees may not fit into the class category of "nonsupervisory employee"; as already discussed, the Court has refined the Class and Subclass definitions to omit "nonsupervisory".

## B

Rule 23(a) next requires there exist "questions of law or fact common to the class". FED. R. CIV. P. 23(a)(2). "One common question is enough," but "[s]uperficial common questions like whether each class member suffered a violation of the same provision of law do not suffice." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021) (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). Instead, "To satisfy the commonality requirement found in Rule 23(a)(2), there needs to be one or more common questions of law or fact that

are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018).

To prevail on their Title VII claims, the Plaintiffs must establish:  1) they were subjected to unwelcome sexual conduct, advances, or requests; 2) because of their sex (female); 3) that were severe or pervasive enough to create a hostile work environment; and 4) that there is a basis for employer liability." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 812-13 (7th Cir. 2022).  An employer may be liable for a hostile work environment that originates from the harassing conduct of third parties where the employer has been negligent in discovering or remedying the harassment.  *Equal Emp. Opportunity Comm'n v. Vill. At Hamilton Pointe LLC*, 102 F.4th 387, 403 (7th Cir. 2024).  The Plaintiffs' Section 1983 equal protection claims require the Plaintiffs to establish, among other things, that the Defendants "acted with a nefarious discriminatory purpose".  *Word v. City of Chi.*, 946 F.3d 391, 396 (7th Cir. 2020); *see also Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996) (explaining a plaintiff must show the defendants acted either intentionally or with deliberate indifference in order to establish nefarious discriminatory purpose).  To establish IDOC as the Wexford Subclass' "joint employer", those Plaintiffs must show IDOC exerted significant control over them in order to succeed on their Title VII claims against IDOC.  *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014).

The Plaintiffs list 12 factual and legal questions they argue are both common to the class and the majority of factual and legal questions in this case.  Included in their list:  did male "IICs'"[6] masturbation attacks and sexual misconduct create a sexually hostile work environment for female mental health and healthcare employees in Pontiac?; did the Defendants maintain a policy and practice of

---

[6] The Plaintiffs explain that "individuals in custody", or IICs is the updated term for "inmates."  Pls.' Mem. (D. 179 at ECF p. 7 n.1).  The Court will continue to refer to IICs as inmates throughout this Order.

8

tolerating masturbation attacks and sexual misconduct by male inmates against female healthcare and mental health workers?; have the Defendants been on notice of the sexually hostile work environment Plaintiffs and the Class were subjected to?; did the Defendants act with discriminatory intent in their response and inaction to the crisis, including as commonly evidenced by retaliatory acts, deliberate indifference and undue delay, and their disparate response to incidents impacting males?; are the Defendants IDOC and Wexford both employers of the employees in the Wexford Subclass?; and have the Defendants knowingly failed to promulgate sufficient policies and procedures for reporting, tracking, documenting, preventing, and prohibiting inmates' sexual harassment, masturbation attacks, and indecent exposure directed at the members of the Class? Pls.' Mem. (D. 179 at ECF p. 41). The Plaintiffs also point out that the employees in the Class and Subclass perform similar job duties in the same cellhouses, infirmary, and Health Care Unit (HCU) at Pontiac; they rotate and travel throughout the areas of the prison during their shifts; and they work with the same population of inmates (male, maximum security).

The Wexford Defendants argue the commonality requirement is not satisfied here where: 1) whether each individual employee faced an objectively hostile work environment cannot be determined on a class-wide basis; 2) each individual employee's subjective perception of her work environment is a necessary element of her liability claim under Title VII, and this naturally cannot be decided on a class-wide basis; and 3) since the Defendants' negligence is a necessary element of the Title VII claims at issue here, liability as to each employee's claim would necessarily turn on the reasonableness of the Defendants' response to the problem during the time that particular employee was working at Pontiac. The Individual Defendants argue commonality is not satisfied here because the facts highlight that each masturbation sexual misconduct offender in

custody who committed the sexual misconduct complained of by the putative Plaintiffs presents different situations that vary among the different categories of individuals in custody who had different policies, procedures, and remedial measures applied to them. The IDOC Defendants argue that even if the Plaintiffs' claims each raise the "common question" of whether they were exposed to a hostile work environment, a class cannot be certified in this case because analysis of their claims is inherently fact intensive and requires a "worker-specific" inquiry that cannot be litigated on a class-wide basis. Both the Wexford and IDOC Defendants rely heavily upon *Howard v. Cook County Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021), while the Individual Defendants cite *Bolden v. Walsh Construction Company*, 688 F.3d 893 (7th Cir. 2012).

In *Howard*, a putative class of female plaintiffs alleged a "horrible 'epidemic'" of sexual harassment at the Cook County Jail and sued their employers, the Cook County Sheriff's Office and Cook County, for failing to prevent male inmates from sexually harassing them. 989 F.3d at 592. As here, the plaintiffs alleged male inmates exposed their genitals to them, masturbated at them, and directed sexual remarks and gestures at them, which occurred on a daily or nearly daily basis throughout the jail, and that they complained of the harassment to no avail. *Id*. at 594. Also as here, the Plaintiffs sued the Defendants for permitting a hostile work environment in violation of Title VII and for gender discrimination in violation of the Fourteenth Amendment's Equal Protection Clause pursuant to Section 1983, among other claims. *Id*. at 594. The named plaintiffs proposed to sue for thousands of women who worked at the jail or courthouse. *Id*. The district court certified a claim consisting of all non-supervisory female employees who worked with male inmates at the jail or courthouse, the inmates numbering about 2,000. *Id*. The Seventh Circuit reviewed the district court's class certification, and in doing so, the former detailed the

10

particulars of the jail complex, the named plaintiffs, and the evidence submitted in support of class certification including, among other things, the defendants' policies and procedures, many class members' declarations, and deposition testimony from class members and witnesses. *Id*. at 592-94.

The district court's commonality analysis originally focused on the third element of a hostile work environment claim, and it found commonality where every class member "worked in an environment plagued by ambient harassment[]", defined as "the experience of working in an environment highly permeated with sexually offensive and degrading behavior . . . a highly sexualized atmosphere in which crude and offensive sexual behavior is common and employees see that it is normative, whether specifically directed at them or not." *Id*. at 595, 600-01. As for "ambient harassment", the Seventh Circuit held "the district court erred insofar as it found that ambient harassment supplied a common question for the modified class." *Id*. at 602. Moving on to direct harassment, the Seventh Circuit, reiterating that hostile work environment claims are fact intensive, noted the evidence revealed class members' experiences could vary significantly depending on where they worked. *Id*. at 604. The court considered the "massive" jail complex that filled dozens of buildings sprawling eight city blocks, there were many different work assignments at the jail and connected courthouse, and evidence showed sexual harassment was heavily concentrated within a few residential divisions where a fraction of class members and named plaintiffs worked. Ultimately, the Seventh Circuit explained the plaintiffs could not demonstrate that class members working in disparate parts of the massive jail complex had experienced the same work environment, precluding satisfaction of the commonality requirement. *Id*. at 604-05.

In *Bolden*, the 12 named plaintiffs previously worked for the defendant builder and filed suit against it, alleging the defendant's superintendents

11

practiced, or tolerated, two kinds of racial discrimination – in assigning overtime work and in working conditions. 688 F.3d at 894. The defendant had a central organization of permanent employees which included superintendents to manage particular projects. *Id*. They had discretion over hourly workers' hiring and pay and were, for the most part, in charge, while the central organization had a few policies including rules against racial discrimination and a requirement that superintendents honor collective bargaining agreements. *Id*. The district court certified the lawsuit as a class action that covered all of the defendant's 262 projects in the Chicago area since mid-2001; one class was a hostile work environment class and the other was an overtime class. *Id*. at 895.

The Seventh Circuit found a common question lacking where different work sites had materially different working conditions – different superintendents with different policies, superintendents who used different groups of foremen (upon whom many of the allegedly discriminatory practices depended) at different sites – and stated "when multiple managers exercise independent discretion, conditions at different . . . sites[] do not present a common question." *Id*. at 896

### 1

The Wexford Defendants here say the masturbation "attacks" at Pontiac came in many forms, many female health care professionals who worked at Pontiac during the same time as named Plaintiffs Kainz and Bailey never filed reports of inmate sexual misconduct, the Defendants are entitled to an opportunity to present relevant evidence as to each class member's claim and to examine each such class member as to her own experiences, and, in the end, the Plaintiffs' Motion for class certification is simply a repackaging of the "ambient harassment" argument that the Seventh Circuit rejected in *Howard*. The Wexford Defendants also argue that the subjectivity element of a hostile work environment claim precludes a commonality finding where "subjectivity, by its very nature, is not

something that can be determined on a class-wide basis."  Wexford Defs.' Mem. (D. 193 at ECF p. 21).[7]

The Court rejects the Wexford Defendants' attempt to place this case squarely within the contours of the *Howard* case so as to preclude finding the commonality requirement is satisfied here.   The facts of this case are distinguishable for several reasons, as identified by the Plaintiffs in their Reply (D. 200) to the Wexford Defendants' brief.  First, they do not rely on an indirect theory of ambient harassment as the putative class was subjected to direct harassment by masturbation attacks from inmates at Pontiac.  In contrast to the *Howard* class members, the class members here performed similar job duties to one another, performed those duties in the same locations in Pontiac (not a swath of females employed in notably different capacities), traveled throughout Pontiac during their shifts (not throughout dozens of buildings), worked with the same male maximum security population of inmates (not female and male inmates, maximum and minimum security, etcetera), and were allegedly subjected to the same singular crisis of sexual misconduct, namely masturbation attacks (not generalized inmate misconduct).  Those are pertinent facts of this case applicable to the entire proposed Class and Subclass for the fact-intensive inquiry demanded for hostile work environment claims.  It is from that common core of operative facts that the putative class's claims arise.

The Wexford Defendants' arguments as to commonality cross the line into the territory of *excessive* consideration of the merits.  *See Messner*, 669 F.3d at 811

---

[7] The Wexford Defendants lastly argue the commonality requirement is not satisfied where the reasonableness of the measures Wexford took and how those may have addressed the harassment facing the proposed class members warrants a unique analysis as to each proposed class member, and the Plaintiffs' Motion must assume that the conditions at Pontiac over the seven-plus-year class period constituted a static environment.  For reasons explained in this Order, this Court does not find *Howard*'s findings to compel the same ones here given that the case is distinguishable from this case.

(stating a court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."). The general rule is that "the court should not decide the merits when deciding class certification," though "the Supreme Court has also taught that merits questions may be considered 'to the extent – but only to the extent – that they are relevant' in applying the Rule 23 requirements." *In re Allstate Corp. Secs. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020) (quoting *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013)).

In *Brown v. Cook County*, 332 F.R.D. 229 (N.D. Ill. 2019)[8], the named plaintiffs were women who served or had served as assistant public defenders for Cook County and who contended that the defendants – Cook County, the Cook County Public Defender, and the Cook County Sheriff – created a hostile work environment for women they employed. *Id*. at 233. Specifically, they alleged that events which occurred primarily, but not exclusively, in divisions of the "sprawling" Cook County Jail system which housed maximum security detainees and lockups in the criminal courthouse included exhibitionist attacks perpetrated by detainees including indecent exposure and masturbation. *Id*. They alleged detainees targeted women assistant public defenders and law clerks for the attacks and that the attacks were organized by detainees who were in the prison gang "Savage Life". *Id*. at 233-34. The Northern District of Illinois ultimately granted the plaintiffs' motion for class certification. *Id*. at 249.

---

[8] The Wexford Defendants argue as to *Brown* that "the rationale behind the district court's decision in certifying a class in *Brown* is virtually indistinguishable from the rationale the same court used to certify the class in *Howard*, a decision that was reversed by the Seventh Circuit." Wexford Defs.' Mem. (D. 193 at ECF p. 28). The IDOC Defendants likewise attempt to undermine *Brown*, arguing the Seventh Circuit's "decision in *Howard* strongly suggests that it would have been subject to reversal, just like the district court's decision in *Howard* if the decision had been appealed." IDOC Defs.' Mem. (D. 198 at ECF p. 31). There is quite a bit of speculation in that statement. What matters to this Court is the fact that the district court's order certifying the plaintiff class was not appealed, remains good law, and is more closely aligned, factually, with the Plaintiffs' case here than in *Howard*.

As in *Brown*, the Plaintiffs "point to evidence . . . they contend shows common questions regarding several of the [D]efendants' policies and their effects on the [P]laintiffs' work environment[]", and "[a]ny one of these or several other common questions . . . will resolve an issue that is central to the validity of each claim[.]" *Id.* at 241 (citing *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015)).   In other words, a class-wide proceeding here is capable of generating common answers to push the resolution of this litigation. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  With regard to the objective and subjective elements of the Plaintiffs' hostile work environment claims, Wexford's arguments would be more convincing if every single question must be common to the class, but, again "even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 329.

2

The IDOC Defendants spend much of their brief identifying the "differences" in this case – between IDOC and Wexford employment, between mental health and medical employees, between assignment locations and inmate demographics, between training, between chain of command for reporting incidents of sexual misconduct, between duties among different classifications of medical staff, and more.  IDOC Defs.' Mem. (D. 198 at ECF pp. 13-19).  As already noted, they rely heavily upon the Seventh Circuit's opinion in *Howard*.  Their arguments against commonality are therefore rejected for the same reasons the Court rejects the Wexford Defendants' commonality arguments (premised upon *Howard*).  Though the Court adds that the common questions IDOC demands for class certification distorts the actual test for them as articulated by the Supreme Court and Seventh Circuit.  For example, IDOC argues class members experience alleged masturbatory attacks in different ways:  some cell-front, some in group or individual therapy sessions, some in different locations altogether.  *Id.* at ECF pp.

15

28-29. The common thread is the crux of the issue – a "masturbatory attack" – and, moreover, all the locations listed are located in the same place – Pontiac Correctional Center. Attempting to distinguish *Brown*, the IDOC Defendants resort to speculation: "the *Brown* plaintiffs *could in theory* have had similar exposure to the conduct at issue[]" in that case. *Id.* at ECF p. 30 (emphasis added).

Once again, the test of commonality does not require the class members' claims to involve identical facts from beginning to end but instead "must depend on a common contention that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Howard*, 989 F.3d at 598 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350)); *see also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015) ("[O]ur cases demonstrate that commonality as to every issue is not required for class certification."). In reply to the IDOC Defendants' lack of commonality argument, the Plaintiffs underscore the facts shared between the two proposed classes such as the fact that they provided healthcare and mental health services while in close contact with the male maximum-security population at Pontiac; performed functions that were similar in this very material respect, even if their day to day functions varied in non-material respects; all worked in the same department – Pontiac's Programs Department – and thus reported to common leadership with authority to respond to crisis; all worked under the same policies, rules, and procedures governing inmate sexual misconduct at Pontiac and received the same training as to those policies; and experienced sexual harassment for months and months and then years before the Defendants attempted to formulate a response.

**3**

The Individual Defendants argue that within the context of this case, the Court must determine if each policy, procedure, or remedial measure at issue was

16

objectively unreasonable in deterring the masturbation sexual misconduct offenders engaged in based upon each offender's individual and specific circumstances and responses, and such a determination is not appropriate here on a class basis. In making such a determination, the Court will be engaged in a robust merits inquiry which is improper for the Court to do at this stage. *See Amgen Inc.*, 568 U.S. at 466 (". . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

The Individual Defendants' reliance upon *Bolden* is similarly problematic and unconvincing. The *Bolden* court determined the hostile work environment class there was unmanageable: "It would require at least one trial per site (to ascertain site-specific conditions) and perhaps one trial per week or month per site (because construction crews are constantly changing, and workers on site while concrete was being poured may have encountered working conditions different from those that prevailed when cabinet work was being installed)." *Bolden*, 688 F.3d at 898-99. Such differences between class members' circumstances here are simply not present. A single IDOC facility is involved here – Pontiac. A single prison population is involved here – male maximum-security inmates. A single aspect of the facility's services is involved here – healthcare (medical and mental). There is no such constant change and/or difference as seen in *Bolden*.

Tellingly, as the Plaintiffs highlight, *one* Sexual Misconduct Workgroup, not two or several, was formed to address the crisis at Pontiac. The Plaintiffs do not allege a series of discrete, unrelated events; they allege a singular, systemic crisis that has impacted the entirety of Pontiac. They allege the Defendants discouraged and retaliated against women who opposed the environment, blamed female staff for their inability to set boundaries or what they wore, and waited years before attempting to do something about the environment, made clear that women were expected to put up with the conduct as part of their jobs, and continuously

17

required class members to go to the cell houses, yards, and HCU knowing they would be subjected to sexual misconduct. These allegations present common questions of fact and law from which can be derived common answers that are necessary to move the case forward, including as it pertains to the claims against the Individual Defendants.

At bottom, whether with regard to the Wexford Defendants, the IDOC Defendants, or the Individual Defendants, this case involves a homogenous Class and Subclass and a discrete environment. The Court finds the Plaintiffs have identified several common questions that are both capable of class-wide resolution and central to validity of their Title VII and Section 1983 equal protection claims.

## C

Rule 23(a) thirdly requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class". FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 866 (7th Cir. 2018) (quotation marks omitted). Typicality is "meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Howard*, 989 F.3d at 605. Commonality and typicality are "closely related" with the distinction between them being that "the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Id*. at 606 (internal citations omitted).

The Plaintiffs argue succinctly that their and the class members' claims arise from the same work environment and same course of conduct that fostered it, and the claims are based on the same legal theories as illustrated in the context of commonality. The Wexford Defendants retort that it necessarily follows from the

unique experiences of each proposed class member, for purposes of determining the Defendants' liability under Title VII, or lack thereof, that the experiences of the five named Plaintiffs cannot be "typical" of the entire proposed class.  The Individual Defendants argue that in this context, it is more likely that resolving one of the putative Plaintiffs' claims will not be sufficiently representative of the hostile work environment named claims made by other Plaintiffs regarding sexual harassment by other and different individuals in custody at Pontiac.  The IDOC Defendants summarize their argument in this regard as follows:  the Plaintiffs cannot establish typicality because the putative class members have too many differences for the named Plaintiffs' claims to represent theirs.

In other words, all three sets of Defendants argue a finding of typicality is precluded for the same reasons that commonality is.  For the reasons the Court rejected their arguments and has now found the commonality requirement is satisfied, the Court finds the typicality requirement is satisfied here as well.  The IDOC Defendants' argument that former employees (three of whom are named Plaintiffs) lack standing to pursue prospective injunctive and declaratory relief on behalf of current and former Pontiac employees is a non-starter.  Two of the named Plaintiffs – Sabrina Drysdale and Rebeka McGrath – remain employed there and can represent the class for injunctive relief purposes.[9]

## D

Rule 23(a) fourth and finally requires "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).

---

[9] The IDOC Defendants erroneously rely on *Brown v. Cnty. of Cook*, 549 F. Supp. 2d 1026 (N.D. Ill. 2008).  In that case, there was only *one* named plaintiff, and he lacked standing to assert a claim for injunctive relief where he was retired and was therefore in no danger of future harm, rendering Rule 23(b)(2) "knocked out".  *Id*. at 1032; *see* FED. R. CIV. P. 23(b)(2) (providing a class action may be maintained where Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

Adequacy of representation includes two parts:  the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.  *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).  "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  Here, no Defendant takes issue with the named Plaintiffs' counsel.

The Plaintiffs argue this requirement is satisfied as the proposed class representatives have the same interest as the putative class, have demonstrated knowledge of the case and have no material conflicts with those of the putative class, and class counsel have extensive relevant experience and are committed to vigorous, adequate, and fair representation of the class.  The Wexford and Individual Defendants do not raise a direct challenge with regard to this requirement.  The IDOC Defendants, however, argue at least one named Plaintiff – Kainz – is not even a member of the class as she is a supervisor, and the named class representatives are inadequate representatives because they do not include all 16 different types of medical and mental health professionals in the putative class.  They more specifically argue that the proposed class includes employees in positions with the discretion to direct other potential class members to perform tasks that increase the risk of exposure to sexual misconduct, and it also includes class members who either blatantly disregarded directives to document sexual misconduct by inmates or rarely or never experienced it.  The Plaintiffs dispute a conflict exists between the class representatives and certain class members as the common, primary duty of the employees in the class was to provide healthcare and mental healthcare services to inmates, not supervision.

The Court agrees with the Plaintiffs that no conflict exists which would otherwise preclude finding the named representatives are adequate representatives. The Supreme Court has observed:

> The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quotation marks omitted). Here, the Court has already found the commonality and typicality requirements have been satisfied. It has also already done away with the supervisor/non-supervisor argument in removing it from the Class and Subclass definitions. As the Plaintiffs insist, providing "clinical supervision" to lesser credentialed staff is nowhere near comparable to an actual conflict sufficient to overcome the common injury and interest in eliminating masturbation attacks. Finally, the Court rejects the IDOC Defendants' arguments for an additional reason: as the Plaintiffs point out, neither the Plaintiffs nor class members had authority to address the crisis at Pontiac in any substantive way and neither, it appears, did they participate in the creation of the crisis. Rule 23(a)(4) is satisfied.

## IV

Next, the Plaintiffs must satisfy Rule 23(b). Rule 23(b)(2) provides, in relevant part, that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". FED. R. CIV. P. 23(b)(2). Rule 23(b)(3) provides, in relevant part, that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Plaintiffs seek certification under a hybrid approach so that the class would receive equitable relief under Rule 23(b)(2) and damages under Rule 23(b)(3).

## A

"Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1*, 797 F.3d at 441. Of note, the Plaintiffs say the "trouble" – the environment at Pontiac which is at the heart of this lawsuit – began in about 2015-16 when IDOC began funneling "Savage Life" gang members from Cook County Jail into Pontiac. Plfs.' Mem. (D. 179 at ECF p. 7). They say this gang's well-known purpose is to orchestrate masturbation attacks on female staff, and the attacks quickly increased on a scale that was unprecedented upon the gang's arrival. *Id*. at ECF pp. 7-8. Further, the Plaintiffs state, "All told, Defendants' actions and deliberate inaction after 2016 caused the sexual misconduct and masturbation attacks to increase to the point that they became engrained in the institution's everyday culture." *Id*. at ECF p. 8. Meanwhile, the IDOC Defendants challenge the Plaintiffs' telling of what led to the "trouble" at Pontiac, arguing the Plaintiffs assert without any supportable admissible evidence that the incidence of sexual misconduct at Pontiac traces back to "Savage Life" gang members arriving from Cook County Jail in 2015-16. IDOC Defs.' Mem. (D. 198 at ECF pp. 22-23 n.12).

The Plaintiffs argue the Defendants acted on grounds applicable to the class as a whole where: the totality of the Defendants' actions and deliberate inaction, including the decision in not responding to what was happening post-Savage Life's introduction into Pontiac and funneling its members into Pontiac, allowed

the environment of which they complain to occur.  They accordingly argue system-wide revamping of the Defendants' policies relevant to reporting and preventing sexual misconduct and measures to stop Savage Life ("Security Threat Group") from recruiting new members and continuing to spread its culture of coordinated sexual assault on female health and mental healthcare staff will also be common to the class as a whole.

The Individual Defendants argue the Plaintiffs' requests for declaratory and injunctive relief made against the IDOC Defendants[10] will prove impossible given the different standards that apply to sexual misconduct offenders in custody who are seriously mentally ill (SMI) or with a mental health condition which requires that they receive individual assessments and evaluations when charged with masturbation sexual misconduct.  The IDOC Defendants, adopting the Wexford Defendants' arguments, contend a two-phase "pattern or practice" procedure[11] would not be suitable in this private class action seeking monetary compensation under a hostile work environment theory.  The contours of that argument unnecessarily complicate the inquiry the Court must make when a party asks for hybrid certification under Rule 23(b).  Their argument also reiterates the earlier arguments that hostile work environment claims are too individualized to present common and typical questions, arguments already considered and rejected.[12]

---

[10] The Plaintiffs state in their Reply that, given Wexford has not been operating as a contractor of IDOC since July 30, 2025 (a fact the Plaintiffs did not learn until after they filed their instant Motion for class certification), they will not seek prospective injunctive relief against Wexford because it is no longer operating at Pontiac. Pls.' Reply to Wexford (D. 200 at ECF p. 12).  The Court thus does not consider the Wexford Defendants' arguments as to Rule 23(b)(2) insofar as they are concerned.

[11] The Wexford Defendants summarize the procedure as follows:  "the Court first certifies a class under (b)(2) for purposes of determining whether the defendants had a 'pattern or practice' of allowing sexual harassment to occur at Pontiac, followed by a 'Phase 2' proceeding wherein each class member would be given the opportunity to present evidence as to how the 'pattern or practice' affected her personally." Wexford Defs.' Mem. (D. 193 at ECF p. 34).

[12] This is to say nothing of the fact that the "pattern or practice" argument relies upon an out of circuit, partially reversed case.  *See* Wexford Defs.' Mem. (D. 193 at ECF pp. 38-39) (discussing at length *Sellars v. CRST Expedited, Inc.*, 359 F. Supp. 3d 633 (N.D. Iowa 2019)).

The Court starts with the Supreme Court's statement that, "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples[]" of actions certified under Rule 23(b)(2). *Amchem Products, Inc.*, 521 U.S. at 614. Next, the Court highlights that the Seventh Circuit has, more than once, suggested the propriety of hybrid certification under Rule 23(b) in cases involving Title VII pattern or practice claims. *See, e.g., Allen v. Int'l Truck and Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004) ("But because this litigation will proceed as a class action for equitable relief, it would be prudent for the district court to reconsider whether at least some of the issues bearing on damages—such as the existence of plant-wide racial animosity, which collectively constitutes one unlawful employment practice . . . —could be treated on a class basis (with opt-out rights under Rule 23(b)(3) or a hybrid Rule 23(b)(2) certification) even if some other issues, such as assessment of damages for each worker, must be handled individually.") (internal citations and quotation marks omitted); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("Divided certification also is worth consideration. It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects.").

Given all this and the Court's earlier findings as to commonality and typicality, the Court finds the Plaintiffs are entitled to certification pursuant to Rule 23(b)(2) of an injunctive class with respect to the IDOC Defendants. Whether it will be "impossible" to provide the requested declaratory or injunctive relief given the SMI population and the *Rasho*[13] settlement agreement is not an

---

[13] The parties' mention of this case is to *Daniels v. Hughes*, Case No. 1:07-cv-01298-JEH-RLH (C.D. Ill.). The *Rasho* (now *Daniels*) case has a long and winding history. The case was a class action "on behalf of all mentally ill inmates who are now or will be incarcerated in IDOC adult correctional centers[]". 1/29/2026 Order (D. 3794), No. 1:07-cv-01298-JEH-RLH, 2026 WL 239937, at *1 (C.D. Ill. Jan. 29, 2026). The parties

appropriate question for the Court as part of this analysis.  Nor is the Court's consideration of which version of events is *the* version of events – whether the "trouble" at Pontiac has been caused by introduction of the Savage Life gang or not – an appropriate question at this time.  The Court may not consider the merits at this stage.  In any event, resolution of such issues will be made based on evidence and theories that are in common.

### B

"Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.  What the rule does require is that common questions predominate over any questions affecting only individual class members."  *Amgen Inc.*, 568 U.S. at 469 (internal citations and quotation marks omitted).  In other words, "common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class."  *Messner*, 669 F.3d at 815 (internal citation omitted).  The predominance and superiority requirements of Rule 23(b)(3) are "intended to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill. 2014) (quoting *Amchem Prods.*, 521 U.S. at 615).

### 1

With regard to predominance, the Plaintiffs argue common issues relating to liability centering on the totality of the Defendants' response to the crisis and

---

entered into a settlement agreement which, relevant here, provided for comprehensive reforms to IDOC's mental health delivery system, including specific and detailed requirements which would govern mental health treatment.  *Id.*  Though judgment was entered in that case on January 29, 2026, the Plaintiffs have filed a Federal Rule of Civil Procedure 59 motion to vacate the judgment and a Rule 60 motion for relief from judgment.

Savage Life far override all other issues, as illustrated in their commonality argument. The Wexford Defendants argue each proposed class member would still, even if there are common questions sufficient for Rule 23(a)(2), have to individually establish she was subjected to a hostile work environment and measures Wexford undertook *during the time she worked at Pontiac* were not enough based upon the circumstances *as they existed during her time there.* *See* Wexford Defs.' Mem. (D. 193 at ECF p. 31) (adding the same emphasis). The Individual Defendants argue there are no singular issues of fact or law that can address and resolve the unique issues here - the viability of their affirmative defenses of qualified immunity, lack of personal involvement needed to show personal responsibility for depriving the Plaintiffs' constitutional rights under Section 1983, the two-year statute of limitations, and whether the Individual Defendants exercised reasonable care in response to the masturbation sexual misconduct. Per the IDOC Defendants, they and Wexford had to balance competing requirements to protect their employees with ensuring the inmates received the required medical and mental healthcare. They say the balance to be struck depended upon individuals' job duties and responsibilities as well as the individual inmates committing the sexual misconduct. They also say they were constrained by the *Rasho* settlement agreement when it came to disciplining and preventing sexual misconduct by SMI individuals. All three sets of Defendants rely, in part, upon their arguments as to commonality under Rule 23(a)(2).

On the one hand, the predominance requirement is "far more demanding" than Rule 23(a)'s commonality and typicality requirements, though similar. *Messner*, 669 F.3d at 814 (quoting *Amchem Products, Inc.*, 521 U.S. at 623-24). On the other hand, and in light of the Defendants' particular challenges, "[i]ndividual questions need not be absent." *Id.* at 815. As for those particular challenges, each set of Defendants persists in arguing differences the Court has already concluded

are not dispositive in their favors. There are far too many common questions susceptible to classwide proof (as detailed earlier) such that they are not outweighed by individual differences as articulated by the three sets of Defendants.

Certainly, the class members do not share the exact same span of time they worked at Pontiac, but there is necessarily overlap where the Class and Subclass are restricted to 2018-present and the Plaintiffs allege the environment that whole time was hostile. Different inmates behaved differently and were perhaps disciplined (or not) differently, but there is necessarily overlap where Wexford, the Individual Defendants, and IDOC all had their own respective and ongoing duties and obligations in relation to prison staff, inmates, and each other. This case involves a select few Defendants in a select few roles together with the facts, among others, of: a single prison with a male maximum security population; only mental and medical healthcare female non-executive personnel and not other females such as correctional officers; mental and medical healthcare female personnel who were transient throughout that prison in order to provide their services; and mental and medical healthcare female personnel who had available to them the same ways of submitting tickets[14]. The common questions of law and fact are not merely superficial; they form the bones of this case. *See Amchem Products, Inc.*, 521 U.S. at 623 (explaining the purpose of Rule 23(b)(3) is to determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation.").

As the Plaintiffs argue with regard to the statute of limitations, class certification may be appropriate even if a statute of limitations defense might

---

[14] As the Plaintiffs explain in their Motion, IDOC maintains one systemwide procedure for members of the Class and Subclass to report masturbation attacks and sexual misconduct by inmates, and they do so by filling out both a "107" and "434", each of which are referred to, respectively, as "tickets" and "incident reports". Pls.' Mem. (D. 179 at ECF p. 15); *see also* Individual Defs.' Mem. (D. 194 at ECF pp. 10-11).

apply to a subset of the proposed class. Indeed, the statute of limitations defense does not upset the Court's predominance finding. Here, there is a two-year statute of limitations for Section 1983 claims, and so class members who did not work at Pontiac prior to June 16, 2019 are susceptible to that defense. *See Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (explaining that Section 1983 claims in Illinois are governed by a two-year statute of limitations period). But certification under Rule 23(b)(3) is appropriate even though matters such as "some affirmative defenses peculiar to some individual class members[]" will have to be tried separately. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). There remains "a sufficient constellation of common issues" which binds the class members in this case together, and so the statute of limitations does not "automatically foreclose class certification under Rule 23(b)(3)." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). For these reasons, the Court also rejects the Defendants' arguments as to other affirmative defenses in this case.

## 2

With regard to superiority, the Plaintiffs argue, in consideration of the efficient allocation of judicial resources, resolving this controversy as a class action is superior to any other available method given the Plaintiffs allege central issues of fact and law that are central to liability and can be resolved in one stroke. The Wexford Defendants posit this is not a case where potential damages might be too insignificant for any one class member to be incentivized to pursue a claim on her own, thus, there should be nothing preventing others from filing their own cases rather than relying on class representatives to pursue claims on their behalf. To agree with Wexford, that many separate, individual cases would be more effective, the Court would have to completely ignore the unity that exists between and among the proposed Class and Subclass in this case. The IDOC Defendants argue this case involves highly individualized, fact dependent questions and requires an

inherently individualized, person by person assessment such that a class action is not the superior method of adjudication. To agree with IDOC, the Court would have to completely ignore its earlier analyses as to commonality, typicality, and predominance. Once more, this case alleges a singular crisis at a single prison involving a singular inmate population (albeit SMI and otherwise), alleges a singular portion of prison staffing – mental and medical healthcare, and alleges a singular environment in which the female mental and medical non-executive female healthcare employees worked. A class action is the superior method for fairly and efficiently adjudicating this case.[15]

Because the Court finds certification warranted pursuant to Rule 23(a) and (b), it need not address the Plaintiffs' alternative argument for class certification pursuant to Rule 23(c)(4).

## V

For the reasons set forth *supra*, Plaintiffs' Motion for Class Certification (D. 171) is GRANTED. The Court certifies the Plaintiffs' proposed Class and Subclass pursuant to Rule 23(a) and Rule 23(b)(2) for liability, injunctive, and equitable relief and pursuant to Rule 23(a) and 23(b)(3) for damages. The certified Class and Subclass are defined, as revised by the Court, as follows:

> **Title VII/Section 1983 Class – IDOC and Wexford.** All current and former non-executive female employees who at any time from June 23, 2018, through the present have worked at Pontiac prison through Wexford or IDOC directly in the medical or mental health

---

[15] The Wexford Defendants make a final argument in their brief that since the questions of law or fact pertaining to the Plaintiffs' Title VII claims will overlap with the Plaintiffs' claims for relief under Section 1983, it follows that those questions pertaining to Section 1983, likewise, are not amenable to class certification. They also argue it is doubtful that Wexford, as a private company, and its employee, Dr. Sokol, were acting under color of law in the handling of sexual harassment claims made by their employees. As for the former argument, it is rejected for the same reasons stated herein focused upon the Plaintiffs' Title VII claims. As for the latter argument, the Court agrees with the Plaintiffs – it is not relevant to class certification because it goes to the merits of the Plaintiffs' claims. *See, e.g.*, *DiDonato v. Panatera*, 24 F.4th 1156, 1160 (7th Cir. 2022) (stating that to determine whether an individual is acting under color of state necessitates "a rigorous fact-bound inquiry.").

departments, including in the following positions: Qualified Mental Health Professional (QMHP), Mental Health Professional, Behavioral Health Technician (BHT), Recreational Therapist, Psychiatric Nurse Practitioner, Social Worker, Clinical Counselor, Clinical Psychologist, Correctional Nurses and trainees, Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified Nursing Assistants (CNAs), Certified Medical Technicians, Nurse Practitioners, Psychiatrists, and Physicians.

**Wexford Subclass.** All current and former non-executive female employees who at any time from June 23, 2018, through the present have worked at Pontiac prison through Wexford in the medical or mental health departments, including in the following positions: Qualified Mental Health Professional (QMHP), Mental Health Professional, Behavioral Health Technician (BHT), Recreational Therapist, Psychiatric Nurse Practitioner, Social Worker, Clinical Psychologist, Clinical Counselor, Correctional Nurses and trainees, Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified Nursing Assistants (CNAs), Certified Medical Technicians, Nurse Practitioners, Psychiatrists, and Physicians.

This matter is referred to the Magistrate Judge for further proceedings.

*It is so ordered.*

Entered on March 10, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE