E-FILED
Thursday, 07 May, 2026  10:15:13 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

|  |  |
|---|---|
| HEATHER KAINZ, SARA BAILEY, REBECCA BUCZKOWSKI, SABRINA DRYSDALE, and REBEKAH McGRATH, on Behalf of Themselves and a Class of Similarly Situated Persons,<br>　　　　Plaintiffs,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS; LATOYA HUGHES, in her Official Capacity as Director of the Illinois Department of Corrections; LEONTA JACKSON, former Warden, in his Individual Capacity; MINDI NURSE, in her Official Capacity as the Warden of Pontiac Correctional Center; TERI KENNEDY, former Warden, in her Individual Capacity; EMILY RUSKIN, former Warden, in her Individual Capacity; KELLY RENZI, former IDOC Psychology Administrator, in her Individual Capacity; JOHN SOKOL, in his Individual Capacity; and WEXFORD HEALTH SOURCES, INC.,<br>　　　　Defendants. | Case No. 1:21-cv-01250-JEH-RLH |

**Order**

1

Now before the Court is the Defendants' Joint Motion for Reconsideration (D. 205).[1] For the reasons set forth *infra*, the Motion is DENIED.

## I

On March 10, 2026, the Court entered an Order (D. 203) granting the Plaintiffs' Motion for Class Certification (D. 171). The named Plaintiffs, a collection of mental and medical healthcare workers, employed either jointly by IDOC and Wexford, by just IDOC, or by one through the other, who worked at IDOC at varying times between 2015 and the present, filed their lawsuit alleging the Defendants intentionally subjected them and the class to unequal and discriminatory treatment in violation of the Plaintiffs' equal protection rights under the Fourteenth Amendment and 42 U.S.C. § 1983. The contours of the Plaintiffs' claims – the crux of which is they were/are allegedly being forced to endure exposure to masturbation and other vulgarities and sexual harassment on a regular basis as a term and condition of their employment – are set out in the Court's Order granting their Motion for Class Certification, and it is unnecessary to repeat all that here given the parties' and Court's familiarity with the procedural history and the controlling Third Amended Complaint (D. 114). That background is incorporated herein.

In granting the Plaintiffs' Motion for Class Certification, the Court first refined the proposed Class and Subclass definitions by replacing "nonsupervisory" with "non-executive." 3/10/2026 Order (D. 203 at ECF p. 6). The Court then considered the four requirements for class certification under Federal Rule of Civil Procedure 23(a), ultimately finding that numerosity, commonality, typicality, and adequacy of representation were all satisfied here. In doing so, the Court discussed the case both the Wexford and IDOC Defendants

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

relied heavily upon, *Howard v. Cook County Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021), and ultimately rejected the Defendants' attempt to place this case squarely within the contours of that case, mentioning it 15 times throughout the Order.  The Court instead relied upon and found as did the U.S. District Court for the Northern District of Illinois in granting class certification in *Brown v. Cook County*, 332 F.R.D. 229 (N.D. Ill. 2019), wherein the plaintiffs alleged the Cook County Public Defender and the Cook County Sheriff created a hostile work environment for the women they employed because detainees targeted the plaintiffs for the detainees' exhibitionist attacks.  *Id*. at 233-34.  Among other things, this Court faulted the Wexford Defendants for making arguments that crossed the line into the territory of excessive consideration of the merits, the IDOC Defendants spent too much of their brief identifying the "differences" in this case, and the Defendants made too much of the supervisor/non-supervisor positions the various class members held.  The Court further found that it was possible to certify the injunctive aspects of the suit under Federal Rule of Civil Procedure 23(b)(2) and the damages aspects under Rule 23(b)(3), and the Plaintiffs, in turn, satisfied the predominance and superiority requirements of Rule 23(b)(3).

In their instant Joint Motion for Reconsideration, all three sets of Defendants (Wexford, IDOC, and Individual) argue "[t]he Court's failure to consider the various different contexts in which potential class members worked and potentially witnessed inmate sexual misconduct misapplies the lessons of *Howard*" insofar as Rule 23(a)(2)'s commonality factor is concerned.  Defs.' Mem. (D. 206 at ECF p. 10).  The Defendants similarly argue the Court's Rule 23(a)(3) typicality finding "ignores the substantial differences in the type of experiences identified by the named Plaintiffs as compared to class members in other positions."  *Id*. at ECF p. 14.  As for Rule 23(b)(2) predominance and superiority, the Defendants likewise argue the Court's reasoning is at odds with and rests on a fundamental

misreading of *Howard*, respectively.  Lastly, the Defendants argue the Court's continued inclusion of "supervisors" in the class does not make the named Plaintiffs adequate class members.  *Id.* at ECF p. 16.  Ultimately, they argue the Court's earlier analysis committed manifest error warranting reconsideration and reversal of the Court's decision regarding class certification.[2]

## II

Federal Rule of Civil Procedure 54(b) governs motion to reconsider filed before the entry of final judgment.  *See Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment . . . ".).   Rule 54(b) provides in relevant part:

> [A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).  "[M]otions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence."  *Woods v. Resnick*, 725 F. Supp. 2d 809, 827-28 (E.D. Wis. 2010) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).  An order shall be altered or amended where the court:  1) patently misunderstood a party; 2) made a decision outside the adversarial issues presented; or 3) made an error not of reasoning but of apprehension.  *Hutcherson v. Krispy Kreme Doughnut Corp.*, 803 F. Supp. 2d 952, 956 (S.D. Ind. 2011).  "Because the standards for

---

[2] The Court notes that in the "Standard of Review" section of their brief, the Defendants cite Federal Rule of Civil Procedure 54(b), while in the "Conclusion" section of their brief, they cite Federal Rule of Civil Procedure 59(e).  Defs.' Mem. (D. 206 at ECF pp. 2, 17).  The latter is inapplicable as it provides, "A motion to alter or amend *a judgment* must be filed no later than 28 days after the entry of the judgment."  FED. R. CIV. P. 59(e) (emphasis added).

4

reconsideration are exacting, the Seventh Circuit has stressed that appropriate issues for reconsideration 'rarely arise and the motion to reconsider should be equally rare.'" *Bd. of Trs. of Univ. of Ill. v. Micron Tech., Inc.*, 245 F. Supp. 3d 1036, 1044 (C.D. Ill. 2017) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). A "manifest error" is "not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Finally, "Motions to reconsider, while permitted, are generally disfavored." *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 714 (N.D. Ill. Oct. 17, 2016).

## A

As for commonality, the Defendants argue the Court did not directly dispute there are "two different employers, and 16 different jobs with vastly different job duties which directly impacted the amount and type of interactions between an employee and inmates most likely to engage in sexual misconduct." Defs.' Mem. (D. 206 at ECF p. 3). They say that the Court found the differences "non-material" in contravention of the Seventh Circuit's admonition in *Howard*. Specifically, the Defendants exhaustively attempt to identify the differences between class members in this case: 16 job classifications; five independent assignments within Pontiac Correctional Center (Pontiac); the frequency and type of exposure that was experienced by medical staff versus that experienced by mental health staff; the type, frequency, and degree of exposure among different medical staff positions; the type, frequency, and degree of exposure based on where mental health staff were assigned to work in Pontiac and the prison population they worked with; the background of the individual inmates engaging in misconduct; inmates' SMI versus general population status; the backgrounds,

training, job duties, and experiences of the employee who witnessed inmate sexual misconduct; and prisons versus jails.

The Plaintiffs highlight the dissimilarities between the facts in *Howard* and here, including: the qualitative differences in duties and functions between class members in *Howard* (e.g., sworn corrections officers and civilian employees); inmate populations (6,500 inmates residing in Cook County Jail at any given time versus 1,000 inmates at Pontiac); male and female detainees charged with a gamut of offenses at Cook County Jail versus only males already convicted at Pontiac; and class members in *Howard* who were geographically disbursed in ways not present here.

The Court first (again) stresses that the "merits themselves are not on the table at this early stage." *Howard*, 989 F.3d at 597 (quoting *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018)). Also, the Court remains mindful of the fact that "class claims must depend on a common contention" which is not simply peripheral to most of the individual class members' claims. *Howard*, 989 F.3d at 598 (internal citations omitted). Nevertheless, by merely again identifying/listing/presenting the alleged differences between class members in this case and attempting to force the contours of this case into the exact contours of the *Howard* case, the Defendants do not demonstrate the misapplication of *Howard*; the Defendants instead reveal they simply disagree with the Court's analysis and wish to take a second bite at the apple. The Plaintiffs' emphasis on the dissimilarities between the facts of *Howard* and this case, which the Plaintiffs in their Motion for class certification listed and the Court itself already emphasized in its March 10th Order, reveals the impropriety of the Defendants' Motion for Reconsideration. Each class member here worked in Pontiac's Programs Department, all held civilian positions with primary duties that required them to work directly, face to face with Pontiac's all-male predominantly maximum-

6

security population, and there is testimony that class members were required to rotate and travel throughout the prison's cellhouses, Health Care Unit, infirmary, and yards regardless of their positions or whether they worked through Wexford. The Court's analysis at pages 10 through 18 of its March 10th Order directly addresses and rejects the Defendants' instant, renewed arguments. 3/10/2026 Order (D. 203 at ECF pp. 10-18) (detailing *Howard* along with *Bolden v. Walsh Constr. Co.*, 688 F.3d 893 (7th Cir. 2012), and *Brown* and, among other things, contrasting the *Howard* class members with those here, stating the common questions the IDOC Defendants demanded distorted the actual test for them as articulated by the Supreme Court and Seventh Circuit, and also explaining this case's similarity to *Brown* in which the plaintiff's motion for class certification was granted). With regard to SMI status, the Court already determined, overall, "this case alleges a singular crisis at a single prison involving *a singular inmate population (albeit SMI and otherwise)*, alleges a singular portion of prison staffing – mental and medical healthcare, and alleges a singular environment in which the female mental and medical non-executive female healthcare employees worked." 3/10/2026 Order (D. 203 at ECF p. 29) (emphasis added). The Defendants do no more than argue that SMI status is "potentially" material, yet again revealing simple disagreement rather than the Court's manifest error. The Defendants argue similarly as to the different training employees who witnessed inmate sexual misconduct received, and so that argument fails for the same reason.

A re-reading of the *Howard* opinion convinces the Court it did not misapply that opinion to the facts of this case. Tellingly, the Seventh Circuit stated in *Howard* that "[s]ome variation among class claims is inevitable[.]" 989 F.3d at 598. That exists here – *some* variation – but not the "*significant* variation in harassment levels across different parts of the jail complex" in *Howard* which the Seventh Circuit said "render[ed] certain class members' work environments materially different from

those of others." *Id*. (emphasis added). The Seventh Circuit further explained that hostile work environment claims involve "'worker-specific' inquiries because they depend on a class member's unique experience – which correlates to *where she works*." *Id*. at 604 (emphasis added).[3] As this Court explained in its March 10th Order, the class members here performed similar job duties to one another and performed those duties in *the same* locations in Pontiac, and they *traveled throughout* Pontiac. (D. 203 at ECF p. 13). In other words, the "where" in this case is the same for *all* of the class members, rendering the class members' worker-specific inquiries not so unique as to defeat commonality. *Compare Howard*, 989 F.3d at 604 (observing that "some – maybe many – class members will have had comparable experiences. But the plaintiffs have not proven that for the entire class.").

Ultimately, the particular facts in *Howard* led to the particular result there, and the particular facts here, as established by the evidence presented, are not the same or even similar enough to those in *Howard* for this Court to reach the same conclusions as did the Seventh Circuit in *Howard* pertaining to commonality. *Cf. Howard*, 989 F.3d at 605 ("Without a stronger evidentiary showing, the plaintiffs cannot demonstrate that class members working in disparate parts of the massive jail complex have experienced the same work environment."). It bears mentioning that in *Howard*, the Seventh Circuit stated, "[W]e do not suggest that none of the class members here could band together to form a smaller class or classes. Conceivably, a smaller class comprising a subset of class members who have had comparable experiences could form a coherent class." *Id*. at 605. The facts of *this* case more squarely fall into the suggested smaller class of members with comparable experiences.

---

[3] Notably, unlike in *Howard*, the Defendants do not argue the reported incidents (via tickets) stemmed from just one part of the jail or involved just one subset of Pontiac's inmate population. *Compare Howard*, 989 F.3d at 604 ("[B]ut the evidence shows that [sexual harassment] is heavily concentrated within a few residential divisions where a fraction of class members and named plaintiffs work."

Insofar as the Defendants' argument that whether they acted negligently is not a common question under the authority of *Howard*, their arguments all fail for the reasons already (again) discussed herein. As the Plaintiffs argue with regard to the Defendants' "overstate[ment]" as to the impact of *Rasho*, the *Rasho* settlement agreement imposed some limitations, but those constraints are common to all class members. The Plaintiffs are also correct that the Defendants advance no new arguments with regard to the questions the Plaintiffs listed, and the Court included in its March 10th Order, as both common to the class and as the majority of factual and legal questions in this case. Lastly, as to whether IDOC and Wexford are "employers" for purposes of imposing Title VII liability, indeed, the Defendants ignore that establishing an employment relationship with IDOC is a predicate to Title VII liability for the Wexford Subclass. *See* 3/10/2026 Order (D. 203 at ECF p. 8) ("To establish IDOC as the Wexford Subclass' "joint employer", those Plaintiffs must show IDOC exerted significant control over them in order to succeed on their Title VII claims against IDOC. *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014)."). The joint employer question is therefore a core question that would advance the resolution of the litigation. Further, the Defendants' (all Defendants) intent in taking the actions they took and did not take is amenable to collective adjudication where the Plaintiffs allege that one course of conduct perpetuated the crisis at Pontiac.

**B**

Again relying on *Howard*, the Defendants argue the "vast dissimilarities between potential class members also preclude a finding of typicality, predominance, and superiority." Defs.' Mem. (D. 206 at ECF p. 13). The Court need not (again) delve into the Defendants' arguments as to those Rule 23 requirements. The Court has twice now explained why *Howard* neither neatly nor obviously nor in fact supports the Defendants' position that the Court improperly

certified the Class and Subclass defined in its March 10th Order. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments."). It is the Defendants who have vastly overstated the differences between class members in this case. The *Howard* court emphasized, "Typicality is meant to ensure that the named representative's claims have the *same essential characteristics* as the claims of the class at large." 989 F.3d at 605 (emphasis added) (quoting *Lacy v. Cook Cnty.*, 897 F.3d 847, 866 (7th Cir. 2018)). The Court's March 10th Order spells out the "same essential characteristics" that exist in this case. Those, in turn, compelled the Court's predominance finding, and the Court bore in mind that "[e]fficiency is the animating principle" of the predominance requirement. *Howard*, 989 F.3d at 607.[4]

A couple things bear particular mention. First, in a footnote, the Defendants address the Plaintiffs' assertion that the potential role of the influx of "Savage Life" gang members into Pontiac and whether Defendants' responses to this phenomena were ineffective and/or deliberately indifferent raises a "common question" that predominates among other questions. Defs.' Mem. (D. 206 at ECF p 15 n.2). The Defendants, of course, reject that assertion. In its March 10th Order, the Court refrained from probing into the role Savage Life plays in this case, instead reasoning that "whether the 'trouble' at Pontiac has been caused by introduction of the Savage Life gang or not" was not an appropriate question upon deciding whether to certify the Class and Subclass. 3/10/2026 Order (D. 203 at

---

[4] Interestingly, the *Howard* plaintiffs, "[p]erhaps sensing that the certified class [stood] on shaky ground," proposed a new common question on appeal: "whether the defendants' tolerance of the inmates' sexual harassment amounts to a pattern or practice of discrimination." 989 F. 3d at 609. The Seventh Circuit explained, "The plaintiffs did not raise this common question below, so they have waived appellate review of it." *Id.* Here, on the contrary, the Plaintiffs very much asserted in their Motion for Class Certification that their "pattern or practice claims [ ] satisfy the commonality requirement." Pls.' Class Certification Mem. (D. 179 at ECF p. 7).

ECF p. 25).[5] Second, in arguing "the impact of the conduct on each individual and resulting damages would require an inherently individualized, person by person, assessment[,]" the Defendants appear to disregard the Court's earlier explanation in that respect. Citing cases, the Court highlighted that the Seventh Circuit has suggested the propriety of hybrid certification under Rule 23(b) in cases involving Title VII pattern or practice claims. 3/10/2026 Order (D. 203 at ECF p. 24). Moreover, "The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015).

## C

Lastly, the Defendants argue the Court, in refining the Class and Subclass definitions by replacing "nonsupervisory" with "non-executive," provides no guidance on the distinction between the two, and therefore presents an unacceptable ambiguity. The Plaintiffs counter the Court's March 10th Order clarified the class excludes executive level managers who had real control and authority over the work environment. They also argue the recommendations some class members made in the context of a disciplinary system that was "irreparably flawed" and the fact that clinical supervision was provided to less credentialed staff are nowhere near sufficient to undermine the common interest

---

[5] Still, in their Response, the Plaintiffs make a good point:

> Common issues relating to liability centering on the totality of the Defendants' response to the masturbation crisis and Savage Life far override all other issues, as set forth [in their Response to the Defendants' Motion to reconsider]. Defendants' argument that the question of whether Savage Life was a root cause of the crisis cannot predominate because two Plaintiffs did not know about the gang is a reflection of Defendants' nonexistent training regarding the gang which is also common.

Pls.' Resp. (D. 208 at ECF pp. 13-14).

the class members have in remediating the "epidemic" at Pontiac.  Pls.' Resp. (D. 208 at ECF p. 15).

The Court agrees with the Plaintiffs.  The Plaintiffs confronted the Defendants' position head on in reply to the Defendants' objections to class certification; the Plaintiffs explained their proposed class definition was *not* intended to exclude non-executive employees of IDOC and Wexford who may have limited supervisory authority such as Nurse Practitioners, RNs, MHPs, and QMHPs.  The Plaintiffs further argued they defined the class to exclude "true management level employees".  3/10/2026 Order (D. 203 at ECF p. 5 (quoting Pls.' Reply to IDOC (D. 202 at ECF p. 11)).  Bearing the Plaintiffs' contentions in mind, the Court determined refinement of the Class and Subclass definitions to refer to "non-executive" resolved the parties' dispute as to overbreadth.  Guidance on the distinction between the two, in order to remove ambiguity, is found within the Court's March 10th Order.  The Court does not see where the refined class definitions present disharmony within the Class and Subclass:  it is one thing to have limited supervisory authority and the ability to *recommend* disciplinary reductions and quite another to have full supervisory authority and the power to fully implement or reject recommendations for reasons benign or otherwise.[6]

---

[6] In *Howard*, the definition of the originally certified class excepted "women who, during [the stated period], have held the positions identified in Exhibit A to the complaint or who were employed in supervisory roles."  989 F.3d at 595.  The district court's modified class definition similarly excepted "women who, during [the stated period], have held the positions identified in Exhibit B to the plaintiffs' Rule 62.1 motion or who were employed in supervisory roles."  *Id*. at 597.  No one here suggests why such a thing could not be done in this case.  Perhaps, if the Defendants persist in arguing the Class and Subclass definitions present an ambiguity, the Plaintiffs can provide them with an exhibit such as Exhibits A and B in *Howard*.

### III

For the reasons set forth *supra*, the Defendants' Joint Motion for Reconsideration (D. 205) is DENIED.  The Class and Subclass, defined as revised by the Court in its March 10, 2026 Order (D. 203), remain certified.[7]

Should a party file a further motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the additional motion for reconsideration.

This matter is again referred to the Magistrate Judge for further proceedings.

*It is so ordered.*

Entered on May 7, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

---

[7] The Court's following statement in its March 10th Order contains a typographical error:  "Here, there is a two-year statute of limitations for Section 1983 claims, and so class members who did not work at Pontiac *prior to* June 16, 2019 are susceptible to that defense."  (D. 203 at ECF p. 28) (emphasis added).  That sentence is amended to read ". . . who did not work at Pontiac *as of* June 16, 2019 *or later* are susceptible to that defense."